UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:10-cv-270-RJC

| | |
|---|---|
| SIR-TRAVIS GEE, | ) |
| Plaintiff, | ) |
| v. | ) ORDER |
| ASHLEY W. BOYLES, Captain, JACOB T. HUNDLEY, Sergeant, DERRICK E. FOX, Correctional Officer, | ) |
| Defendants. | ) |

**THIS MATTER** is before the Court on Defendants' Motion for Summary Judgment, (Doc. No. 23). Petitioner was advised in accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), of his obligation in responding to Defendants' motion and he has filed a response. (Doc. Nos. 25; 26). For the reasons that follow, Defendants' Motion for Summary Judgment will be granted, and Plaintiff's Complaint, (Doc. No. 1), will be dismissed with prejudice.

**I.    BACKGROUND**

According to his Complaint, on December 2, 2009, Plaintiff was a prisoner in the custody of the North Carolina Department of Corrections[1] housed in the Avery Mitchell Correctional Institution. On the night of December 2, 2009, Plaintiff states that he was carrying on a

---

[1] On January 1, 2012, the North Carolina General Assembly established the Department of Public Safety which consists of six divisions. Within this new framework, the North Carolina Department of Corrections became known as the Division of Adult Correction. See N.C. Gen. Stat. § 143B-600(a)(1).

1

conversation with himself when Defendants Fox and Hundley entered his cell. Plaintiff alleges Defendant Hundley punched him twice in his stomach with a closed fist and then choked him while holding Plaintiff's side which prohibited Plaintiff's ability to breath. Plaintiff maintains that he managed to pull away only to be attacked by Defendant Fox who, according to Plaintiff, grabbed him and began pushing and banging his head against the wall of his cell. The effect, as Plaintiff asserts, caused him to lose focus and fall to his knees. Following this exchange, Plaintiff alleges that Fox and Hundley walked out of his cell.

Plaintiff called after Hundley and requested to see the "Captain" and medical personnel to address his injuries. Fox laughed off this request and stated that he would find Defendant Captain Boyles. A short while later, Boyles visited Plaintiff in his cell and Plaintiff explained the alleged assault by Hundley and Fox and Boyles stated that he would have a talk with the officers. Plaintiff renewed his request for medical attention, but Boyles denied Plaintiff's request after concluding that Plaintiff did not need medical attention. This was in spite of Plaintiff's explanation that he needed medical attention to address the stomach and head injuries sustained in the assault carried out by Fox and Hundley.

On December 3, 2009, Plaintiff was transferred from Avery Mitchell to Mountain View Correctional Institution. Plaintiff proceeded "to inform nurses of what took place and that [he] needed medical attention." (Doc. No. 1 at 5). Plaintiff was informed that he would need to put in for a sick call and that he would eventually be evaluated. Plaintiff filed for the sick call and was later seen by a nurse and prescribed 200 mg of Ibuprofen "For the head injury" that Plaintiff alleges he was suffering from. (Id.). Plaintiff took the pain medication but his pain only intensified.

2

On March 10, 2010, Plaintiff contends his medication was increased and he was prescribed 650 mg of acetaminophen. According to the complaint, he continued on this medication for 45-days but his head continued to hurt and his pain grew worse resulting in loss of sleep and appetite. Medical staff then began prescribing medication for stomach pain.

In his claim for relief, Plaintiff seeks an award of monetary damages for pain and suffering, and mental and emotional anguish, in the total amount of $1,500,000 based on the beating he says he sustained and Defendants' failure to secure medical attention. (Id. at 4).

## II.     STANDARD OF REVIEW

### A.     Summary Judgment Standard

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and it appears that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); Emmett v. Johnson, 532 F.3d 291, 297 (4th Cir. 2008). Any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986). Where, however, the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, summary judgment is appropriate. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). Moreover, "[t]he party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of his pleading, but 'must come forward with specific facts showing there is a genuine issue for trial.'" Emmett v. Johnson, supra (quoting Matsushita, 475 F.3d at 587). See also Francis v. Booz, Allen & Hamilton, Inc., 452 F.3d 299, 308 (4th Cir. 2006) ("Mere

unsupported speculation is not sufficient to defeat a summary judgment motion if the undisputed evidence indicates that the other party should win as a matter of law.").

    B.    <u>42 U.S.C. § 1983</u>

Section 1983 provides a remedy where a person acting under color of state law deprives a plaintiff of a right secured by federal law. Section 1983 applies to violations of federal constitutional rights, as well as certain limited federal statutory rights. <u>See</u> <u>Maine v. Thibotout</u>, 448 U.S. 1 (1980); <u>see also</u> <u>Gonzaga University v. Doe</u>, 536 U.S. 273, 283 (2002) (holding that a right must be "unambiguously conferred" by a statute to support a Section 1983 claim); <u>Golden State Transit Corp. v. Los Angeles</u>, 493 U.S. 103, 107-08, n.4 (1989) ("A claim based on a statutory violation is enforceable under § 1983 only when the statute creates 'rights, privileges, or immunities' in the particular plaintiff .").

A <u>pro se</u> complaint in a proceeding in forma pauperis must be construed liberally. <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972). However, the liberal construction requirement will not permit a district court to ignore a clear failure to allege facts in his Complaint which set forth a claim that is cognizable under federal law. <u>Weller v. Dep't of Soc. Servs.</u>, 901 F.3d 387 (4th Cir. 1990).

## III. DISCUSSION

Plaintiff asserts two claims against the Defendants. First, Plaintiff contends that Defendants Hundley and Fox employed excessive force when they entered his cell on December 2, 2009. This force caused Plaintiff "unnecessary and wanton pain and suffering." Plaintiff maintains that he suffered a head injury that, at the time he filed his Complaint, continues to worsen despite treatment. Second, Plaintiff alleges that his Eighth Amendment right to adequate

medical care has been violated through the inactions of Sgt. Hundley and Captain Boyles. As Plaintiff claims, he requested medical attention from these defendants and they refused to arrange for treatment.

Plaintiff participated in the Administrative Remedy Procedure. In Step One, the investigator concluded that Plaintiff, while in segregation, disobeyed orders to "quiet down" after receiving direct orders from Sgt. Hundley and Officer Fox. The investigator found that after Hundley and Fox left his cell, Plaintiff "made no complaints to staff about any medical issues. There is no evidence of any force used and therefore no further action is recommended." In a handwritten notation, Plaintiff would appear to disagree with this conclusion by arguing that the "medical records say different!" (Doc. No. 1 at 8).

In the Step Two Response, the administrator found that Plaintiff was being loud in his cell on December 2, 2009 and refusing to respond to orders to be quiet. The report confirms Plaintiff's allegations that Sgt. Hundley and Fox reported to his cell and asked him to be quiet. The report found there was no evidence to support Plaintiff's grievance regarding a physically violent altercation in his cell. (Id. at 8). In the Step Three response, it was found that Defendants Hundley and Fox violated prison policy by entering Plaintiff's cell without first ensuring that Plaintiff was handcuffed. The report found that Sgt. Hundley and Fox "fabricated their initial statements confirming that they handcuffed the inmate and went into his cell to counsel" Plaintiff. (Id. at 9). The report concluded that while Plaintiff's allegations regarding Hundley and Fox entering his cell had merit, and DOC policy appeared to be violated, "the grievance is considered resolved by the Inmate Grievance Resolution Board." (Id.).[2]

---

[2] The mere violation of an internal prison policy or regulation does not necessarily support an

A.     Excessive Force

The Eighth Amendment prohibits the use of excessive force by a prison official against an inmate. In particular, the Eighth Amendment prohibits the "unnecessary and wanton infliction of pain" which could constitute cruel and unusual punishment. Whitley v. Albers, 475 U.S. 312, 319 (1986). The issue of whether an inmate's Eighth Amendment rights have been violated involves both an objective consideration and a subjective consideration of the alleged action by prison officials. In considering the objective prong, a plaintiff must demonstrate that the "alleged wrongdoing was objectively harmful enough to establish a constitutional violation." Norman v. Taylor, 25 F.3d 1259, 1262 (4th Cir. 1994), abrogated on other grounds by Wilkins v. Gaddy, 559 U.S. 34 (2010). In evaluating this question, the Court must consider "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Wilkins, 559 U.S. at 1178 (quoting Hudson v. McMillian, 503 U.S. 1, 7 (1992)). "When prison officials maliciously or sadistically use force to cause harm, contemporary standards of decency always are violated." Hudson, 503 U.S. at 9 (citing Whitley, 475 U.S. at 327).

In order to meet the subjective component, a plaintiff must demonstrate that the prison official acted with a "sufficiently culpable state of mind." Wilson v. Seiter, 501 U.S. 294, 297 (1991). When considering an excessive force claim under the Eighth Amendment, the question becomes "whether the use of force could plausibly have been thought necessary, or instead

---

actionable claim under Section 1983 unless it supports a finding that federal law has been violated. See Myers v. Klevenhagen, 97 F.3d 91, 94 (5th Cir. 1996). Plaintiff has adduced no evidence that the failure to first handcuff him before entering his cell violated his federally protected rights. Further, as will be discussed below, the complete lack of admissible evidence offered by Plaintiff preclude a finding of the violation of a federally protected right in failing to follow the procedure of first handcuffing an inmate before entering the cell.

evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." Whitley, 475 U.S. at 321 (internal citation omitted).

"The party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of his pleading, but 'must come forward with specific facts showing there is a genuine issue for trial.'" Emmett v. Johnson, 532 F.3d at 297 (quoting Matsushita, 475 F.3d at 587).

The Defendants have produced affidavits, prison medical records, and argument in support of their motion for summary judgment. In his unsworn complaint, Plaintiff alleges that he was beaten by Defendants Hundley and Fox after they responded to his cell to order him to quiet down. Plaintiff describes serious injuries that he sustained during this alleged beating, and he maintains that he demanded medical treatment immediately following the beating. Defendants' uncontested evidence demonstrates otherwise.

According to the Fox Affidavit, Plaintiff was creating a disturbance in his segregation cell on December 2. 2009. Defendants Fox and Hundley responded to Plaintiff's cell and Fox repeatedly ordered Plaintiff to be quiet; however, Plaintiff refused. Fox avers that he did not assault Plaintiff and that he did not witness Hundley assault Plaintiff. Fox also avers that at no time did Plaintiff ask him for medical attention. Last, Fox testifies that he only first learned of Plaintiff's allegations of assault and denial of medical treatment in mid-March 2010 after Plaintiff first made the allegations at Mountain View Correctional. (Doc. No. 24-1: Fox Affidavit at 1-4).

In his affidavit, Defendant Hundley details his actions on December 2, 2009. Hundley avers that he reported to Plaintiff's cell to assist Defendant Fox with a disturbance being caused

by Plaintiff. Hundley ordered Plaintiff to sit down on his bunk and Plaintiff obeyed this command. Next, Hundley and Fox entered Plaintiff's cell and ordered Plaintiff to stop misbehaving and "Plaintiff promised he would stop creating a disturbance. Correctional Officer Fox and I left Plaintiff's cell without further incident." Hundley steadfastly denies assaulting Plaintiff in any way on December 2, and denies witnessing Fox assault Plaintiff. Finally, Hundley avers that Plaintiff never asked him to see a doctor or a nurse for medical attention. (Doc. No. 24-2: Hundley Affidavit at 1-4).

Defendant Boyles testifies that Fox and Hundley described Plaintiff's behavior in creating a disturbance in his cell and detailed their reaction to the disturbance which they described as without incident. Boyles avers that he spoke with Plaintiff following Defendants Fox and Hundley's trip to his cell that night. Boyles testifies that "[w]hile Plaintiff was unhappy with Sergeant Hundley for giving him orders within earshot of other inmates, he otherwise appeared in good spirits." Boyles observed "no marks, bruises, swelling, scrapes, cuts or blood on Plaintiff" and "Plaintiff did not appear as if he were in pain or discomfort. Plaintiff exhibited no signs of having been recently assaulted. Plaintiff made no complaints to me about Correctional Officer Fox or Correctional Sergeant Hundley." Boyles further avers that Plaintiff never asked him to see a doctor or a nurse for medical treatment." Boyles testified that he made several rounds through the segregation unit on the evening of December 2, and no one reported any kind of disturbance to him, that is, despite the presence of nine other inmates within that unit and healthcare staff entering and exiting the segregation unit during that evening. (Doc. No. 24-3: Boyles Affidavit at 1-5).

A day or so after Plaintiff's alleged incident, he was transferred to Mountain View

8

Correctional and examined by Nurse Norma Melton pursuant to prison policy through the use of a "health and segregation medical screening." Melton testifies in her affidavit that during the screening "Plaintiff voiced no complaints of physical ailments or injuries." Nor did Plaintiff appear to have any "discernible injuries." Melton "saw no marks, bruises, swelling, scrapes or cuts on Plaintiff. Plaintiff did not appear has if he were in pain or discomfort. Plaintiff exhibited no signs of having been recently assaulted." Melton continues that if "Plaintiff had presented with any injuries, [she] would have noted those injuries on his Health Screening form," and Melton avers that if Plaintiff had shown signs of injury she would have likewise recorded her observations. After Melton completed her screening, Plaintiff signed the form. In examining the form, it is clear that Plaintiff represents that he had no "swollen areas" and only complains about a loss of appetite. Last, in the Segregation Health Evaluation Log, it is reported that Plaintiff had no complaints following his initial screening and this log was also signed by Plaintiff. See (Doc. No. 24-4 at 1-7).

Finally, Plaintiff's medical records, which are submitted with Defendants' motion for summary judgment, and which are not disputed by Plaintiff, show that he first raised the specter of the December 2, 2009 assault in March 2010, to a nurse at Mountain View Correctional. See (Doc. No. 24-5 at 5 ¶ 18). Plaintiff was examined and no "marks, bruises, swollen areas or other injuries" were found. (Id. ¶ 19). On May 21, 2010, Plaintiff again disclosed his allegation of the December 2 assault to Staff Psychologist Ken Yearick who noted that Plaintiff "has the belief that his sentence will be commuted if the abuse allegations are supported." (Id. ¶ 20). Dr. Yearick found that Plaintiff exhibited no signs of injury. (Id.).

A fair review of the affidavits and medical records shows the following, which is

9

undisputed through denial or the production of other evidence by Plaintiff: There is no record for a sick call following the December 2, 2009 disturbance until March 2010, and at that time there was no physical evidence to support such a charge. In his December 4, 2009 medical screening, Plaintiff makes no allegations of injury, and through his signature it appears he agrees with Nurse Melton's assessment that he reports no injury and that he appears to have no injury. And last, the evidence tends to show that Plaintiff expressed the belief that he would gain favor in his bid for early release by pressing his claims, claims for which he has offered no evidence or rebuttal to the overwhelming evidence offered by Defendants.[3]

Plaintiff has produced nothing short of an unsworn complaint which attached the documents from his participation in the mandatory grievance procedure. In response to this Court's Roseboro Order, Plaintiff filed a document entitled "Motion to Reject Defendants Motion for Summary Judgment . . ." (Doc. No. 26). Although Plaintiff declares under penalty of perjury that the statements in his response to Defendants' motion for summary judgment are true, he has offered nothing other than to express his regret over a lack of access to legal materials. He does not refute the evidence offered by the Defendants, namely, the affidavits which detail the night of December 2 and the medical records which detail when Plaintiff made requests for medical treatment. Interestingly, the one comment made by Plaintiff is on the Step One response wherein he appears to state that the "medical records say Different!" (Doc. No. 1 at 8). As the evidence has shown, this is far from true. In fact, the medical records fully defeat his allegations.

In conclusion, the Federal Rules make it incumbent upon Plaintiff to offer some evidence

---

[3] The Court does not reach Plaintiff's claim for medical indifference as he has failed to offer any admissible evidence that he even suffered any injury during the December 2 visits to his cell by Defendants Fox and Hundley.

to demonstrate that there is a genuine issue of fact for trial. The record before this Court makes plain that there is no issue upon which a reasonable jury could find in Plaintiff's favor. Accordingly, Defendants' motion for summary judgment will be granted.

## IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that:

1. Defendants' Motion for Summary Judgment, (Doc. No. 23), is **GRANTED**;

2. Plaintiff's Complaint, (Doc. No. 1), is **DISMISSED** with prejudice; and

3. The Clerk is directed to close this case.

Signed: February 20, 2013

Robert J. Conrad, Jr.
Chief United States District Judge